IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAWRENCE GAVIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 12 C 6178 |
| ) | |
| LIFE INSURANCE COMPANY OF, ) | |
| NORTH AMERICA and CORN PRODUCTS ) | |
| INTERNATIONAL, INC. MASTER ) | |
| WELFARE AND CAFETERIA PLAN, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER
IDENTIFYING *DE NOVO* REVIEW AS THE APPLICABLE
LEGAL STANDARD IN THIS CASE

JAMES F. HOLDERMAN, Chief Judge:

On June 6, 2012, plaintiff Lawrence Gavin ("Gavin") filed a complaint in this court seeking to recover long term disability ("LTD") benefits allegedly due under the terms of an LTD group policy of insurance, Policy Number LK0960591 ("Policy"), which is underwritten, funded, and administered by defendant Life Insurance Company of North America ("LINA") for the benefit of employees of Corn Products International, Inc. ("CPI"). (Dkt. No. 1 ("Compl.") ¶¶ 1, 4.) The Corn Products International, Inc. Master Welfare and Cafeteria Plan (the "Plan"), also named as a defendant, was established to provide employee welfare benefits to employees of CPI in accordance with the Policy. (*Id.* ¶ 6.) Gavin brings his claims against LINA and the Plan pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") § 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B).

On November 8, 2012, the court ordered briefing on the issue of the appropriate standard of review to apply in this case and any associated limits on the scope of discovery. (Dkt. No.

1

14.) For the reasons set forth below, the court holds that the *de novo* standard of review applies, such that this court will independently determine based on the evidence presented in this case whether Gavin is entitled to LTD benefits under the terms of the Policy. All discovery relevant to this independent determination will be permitted, subject to the Federal Rules of Civil Procedure and any applicable discovery rulings made by this court or by the assigned magistrate judge.

## BACKGROUND

At this stage of the proceedings, the court accepts as true all well-pleaded factual allegations set forth in the Complaint. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012).

The Policy states, in relevant part, that an employee "is considered Disabled if, solely because of injury or sickness, he or she is: (1) unable to perform the material duties of his or her Regular Occupations; and (2) unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation." (Compl. Ex. A at 2.)

Gavin was employed by CPI as a Senior Process Engineer until February 16, 2011, when he stopped working due to a combination of osteoarthritis, Marfan's syndrome, and severe depression. (Compl. ¶¶ 9-10.) After an occupational health physician deemed Gavin incapable of working, Gavin submitted a claim for LTD benefits to LINA.[1] (*Id.* ¶ 10.) LINA denied Gavin's claim for LTD benefits on August 11, 2011. (*Id.*)

Gavin thereafter appealed LINA's initial decision to deny LTD benefits, submitting additional medical records as well as the Social Security Administration's decision to approve disability benefits for Gavin based on a disability that began on February 16, 2011. (*Id.* ¶¶ 11-12.) On July 26, 2012, LINA upheld its initial decision to deny Gavin's claim for LTD benefits.

---

[1] The parties agree that LINA was the designated "Claims Administrator" for the Policy, as discussed in n. 2 below.

(*Id.* ¶ 13.) Gavin filed his Complaint on June 6, 2012, alleging that "[t]he evidence submitted to LINA establishes that [Gavin] has been continuously unable to return to work since February 16, 2011, and thus met and continues to meet the Policy's definition of disability since that date," and that he is therefore entitled to LTD benefits under the terms of the Policy. (Compl. ¶ 15.)

## APPLICABLE LAW

The Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The default for denial of benefits cases is thus "independent decision" by the court. *Aschermann v. Aetna Life Ins. Co.*, 689 F.3d 726, 728 (7th Cir. 2012). "Absent clear language to the contrary, plans are read to provide for searching judicial review of benefits determinations: plenary review of the administrator's interpretation of the facts and plan, fortified by the district court's discretionary authority to hear evidence that was not presented in the administrative process." *Patton v. MFS/Sun Life Fin. Distributors, Inc.*, 480 F.3d 478, 485 (7th Cir. 2007) (internal citations omitted); *see also Comrie v. IPSCO, Inc.*, 636 F.3d 839, 842 (7th Cir. 2011) ("In *Firestone*'s framework, deferential review is exceptional, authorized only when the contracts that establish the pension or welfare plan confer interpretive discretion in no uncertain terms.").

On the other hand, "when the plan confers discretion to interpret and implement its terms, deferential judicial review is appropriate." *Aschermann*, 689 F.3d at 728. The party invoking deferential review "has the burden to establish that the language of the plan gives it discretionary authority to award benefits." *Sperandeo v. Lorillard Tobacco Co.*, 460 F.3d 866, 870 (7th Cir. 2006) (citing *Gibbs v. Cigna Corp.*, 440 F.3d 571, 575 (2d Cir. 2006)).

3

ANALYSIS

1. <u>Standard of Review</u>

It is undisputed that the Plan is an "employee welfare benefit plan" as defined by ERISA. *See* 29 U.S.C. § 1002(1). It is also undisputed that the Plan grants full discretionary authority to the "Committee," appointed by CPI's Board of Directors, to interpret Plan documents and to resolve "any questions relating to the eligibility of one or more Participants for benefits from the Plan and the amount of such benefits." (Pl.'s Ex. B ("Plan Document") § 8.1(b)(2) and (4); *see also* §§ 8.1(a), 8.1(d).) The issue in this case is that the Committee was not the entity that denied Gavin's LTD claims. In Defendants' words, the question before the court "is not whether the plan *confers discretion*, but whether the Committee effectively *delegated* its discretion to LINA." (Dkt. No. 16 ("Defs.' Br.") at 6 (emphases in original).)

> ERISA permits the delegation of fiduciary responsibilities as follows:
>
> The instrument under which a plan is maintained may expressly provide for procedures (A) for allocating fiduciary responsibilities (other than trustee responsibilities) among named fiduciaries, and (B) for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan.

29 U.S.C. § 1105(c)(1). Accordingly, the court begins with the plain language of the Plan to determine whether the Plan "expressly provide[s]" procedures for the Committee to delegate its discretionary authority to LINA, the Policy's Claims Administrator.

The Plan states that the Committee "shall have sole discretion to delegate any of its responsibilities to another person, such as the Plan Administrator or Claims Administrator." (Plan Document § 8.1(c).) The text of this section, titled "Delegation by the Committee," does not explicitly set forth any specific procedures for effecting the delegation of the Committee's

4

responsibilities to the Claims Administrator. The Plan's description of the role of the Claims Administrator, however, clarifies that:

> The Committee or Plan Administrator may appoint one or more persons or entities to act as Claims Administrator under the Plan. The Claims Administrator shall provide advice in relation to the determination of eligibility for participation in and benefits under the Plan or any Group Benefit Plan, shall establish Reimbursement Accounts pursuant to Sections 6.1(a) and 6.2(a), and shall perform all other Plan administrative duties specified in the administrative agreement entered into between the Corporation (acting on behalf of the Employers) and such Claims Administrator, as such agreement may be from time to time amended.

(*Id.* § 8.3.) Thus, pursuant to the plain language of the Plan, absent an "administrative agreement" between the Corporation (e.g. CPI) and the Claims Administrator, the role of the Claims Administrator is limited to "provid[ing] advice in relation to" eligibility and benefits. (*Id.*)

"Courts have generally found that delegation of discretionary authority is proper where a plan document such as the [Summary Plan Description], the Plan itself, or an amendment to the Plan, expressly authorizes a fiduciary to delegate its authority, *and* the delegation of that authority is found in an [Administrative Services Agreement]." *Roush v. Aetna*, No. CV 09-751-PHX-NVW, 2010 WL 2079766, at *12 (D. Ariz. May 24, 2010) (Wake, J.) (emphasis added); *see also Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 810 (7th Cir. 2006) ("the BP Long-Term Disability Plan, coupled with the Administrative Services Agreement between BP and LINA, established LINA's authority and requires that decisions by the plan administrator be reviewed under an arbitrary and capricious standard"); *Madden v. ITT Long Term Disability Plan for Salaried Employees*, 914 F.2d 1279, 1285 (9th Cir. 1990) (applying deferential review where "the Plan gives the LTD Administration Committee discretionary authority and the Committee has properly designated Metropolitan as ERISA fiduciary" pursuant to a "Claims Administration

Agreement"); *Kinser v. Plans Admin. Committee of Citigroup, Inc.*, 488 F. Supp. 2d 1369, 1378-79 (M.D. Ga. 2007) (Royal, J.) (applying deferential review where the plan administrator "properly delegate[d] [its] discretionary authority to determine entitlement to LTD benefits to MetLife" pursuant to an "Administrative Services Agreement"); *Campbell v. Chevron Phillips Chem. Co.*, No. 1:05-CV-0273, 2006 WL 2380896, at *12 (E.D. Tx. Aug. 15, 2006) (Crone, J.) (finding that "the Chevron Plan, via the Services Agreement and the SPD, delegates authority to Aetna regarding benefit eligibility for the Medical Plan").

The Seventh Circuit has further held that, together, an administrative services contract and a summary plan description explaining the plan administrator's delegation of discretionary authority to a third-party claims administrator can be considered an express grant of discretion sufficient to "lower[ ] the standard of judicial scrutiny from de novo to abuse-of-discretion," even if the plan itself is silent on the subject of delegation. *See Raybourne v. Cigna Life Ins. Co. of N.Y.*, 576 F.3d 444, 449 (7th Cir. 2009) (finding that "the Claim Fiduciary Appointment modifies the terms of the underlying plan" to grant discretion to the third-party claims administrator); *accord Ehas v. Life Ins. Co. of N. Am.*, No. 12 C 3537, 2012 WL 5989215, at *4 (N.D. Ill. Nov. 29, 2012) (St. Eve, J.) (same). Likewise, the Seventh Circuit has permitted the delegation of discretionary authority based solely on an "Administrative Service Agreement," when "[n]othing in [the] plan, or [the insurer's] group policy, forbids delegation." *Aschermann*, 689 F.3d at 729.

In this case, the Plan explicitly authorizes the Committee to delegate its discretionary responsibilities to a Claims Administrator, while clarifying that the scope of the Claims Administrator's role is to be defined by an "administrative agreement entered into between the Corporation (acting on behalf of the Employers) and such Claims Administrator." (Plan

6

Document § 8.3.) This case is therefore distinguishable from *Aschermann* and *Raybourne*, where the plans at issue were silent on the subject of delegation. This case is also distinguishable from *Aschermann*, *Raybourne*, and *Semien*, because the Seventh Circuit in each of those cases relied on an express contractual delegation of discretionary authority from the plan administrator to the insurer before finding that deferential review was appropriate. Here, by contrast—and despite the plain language of the Plan—no such administrative agreement has been produced, and it appears that none exists. Without an administrative agreement between CPI and LINA, LINA is only authorized to "provide advice in relation to the determination of eligibility for participation in and benefits under [the terms of the Policy]." (Plan Document § 8.3.)

Defendants argue that "the fact of the delegation is evidenced by and explained in the [Summary Plan Description ("SPD")]." (Defs.' Br. at 16.) The court agrees that the language of the SPD tends to suggest an *attempted* delegation of the Committee's discretionary authority to LINA for purposes of determining benefits awards under the terms of the Policy, but the SPD's language, without more, does not mean that this attempted delegation was in fact valid. The SPD names LINA as the Claims Administrator for the Policy,[2] and further states in relevant part that:

---

[2] The parties both cite to Appendix A of the SPD as evidence that LINA was the designated Claims Administrator for the Policy. (*See* Dkt. No. 15 ("Pl.'s Mem.") at 5; Defs.' Br. at 3.) Appendix A clearly states that the Claims Administrator for the "Long Term Disability Plan" is:
    CIGNA
    12225 Greenville Ave., Suite 1000
    Dallas, TX  75243
    800-362-4462
    www.cigna.com
(Pl.'s Ex. C ("SPD") at A-2.) By way of contrast, the "Business Travel Accident Insurance Plan" on the next line of page A-2 names "Life Insurance Company of North America" as the Claims Administrator for that plan. The relationship between CIGNA and LINA is not clear to the court; however, for purposes of this motion only, the court accepts the parties' apparent agreement that the SPD's reference to CIGNA should be read as though it were a reference to LINA. (*See also* SPD at D-1 (stating that the "Insurance Policy/Booklet" for the "Long Term Disability" plan is provided by "CIGNA").)

> Each of your benefit plans is administered by a claims administrator, as outlined above and detailed in Appendix A. The claims administrator has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of coverage under the respective plan.
>
> * * *
>
> In certain instances, the Plan Administrator has delegated some of [its] responsibilities and authorities to third parties, including the claims administrators.
>
> Any interpretation or determination made under the discretionary authority of the Plan Administrator (or its delegate, including a claims administrator) is to be given full force and effect. The Plan Administrator, its delegate or a claims administrator, as the case may be, has discretionary authority to grant or deny benefits under the plans. Benefits under a plan will be paid only if the Plan Administrator (or its delegate or a claims administrator) decides in its discretion that the applicant is entitled to such benefits.

(SPD at 11, 21.) This language is consistent with the Committee's power to delegate its discretionary authority to the Claims Administrator under the terms of the Plan, but does not itself constitute an express delegation of discretionary authority in the form of an administrative agreement between CPI and LINA. *Compare Raybourne*, 576 F.3d at 449 (noting that the Claim Fiduciary Appointment "is signed by representatives of the plan and Cigna").

The Seventh Circuit has declined to decide whether an express delegation of discretionary authority is required under ERISA. *See Semien*, 436 F.3d at 811 ("Because we find that BP provided LINA with an express delegation of discretionary authority to act as plan administrator, we need not reach the question of whether an implied delegation of authority would be sufficient to shift discretionary authority from the original plan administrator to an insurer."); *see also Aschermann*, 689 F.3d at 728 (reserving the question while relying on the "Administrative Services Agreement" as an express delegation of discretionary authority). Other circuit courts have declined to infer delegation of discretionary authority in the absence of an express authorization by the plan administrator. *See McKeehan v. Cigna Life Ins. Co.*, 344

F.3d 789, 793 (8th Cir. 2003); *Rodriguez-Abreu v. Chase Manhattan Bank*, 986 F.2d 580, 584 (1st Cir. 1993). This court need not decide the issue in this case, because the plain language of the Plan requires an "administrative agreement" to effect the delegation of "Plan administrative duties" to a Claims Administrator such as LINA. (Plan Document § 8.3.)

Because the Committee failed to follow the Plan's own express procedures for delegating the Committee's discretionary responsibilities to LINA, the court finds that LINA was not authorized to deny Gavin's claim. The court will therefore apply the *de novo* standard of review to independently determine whether Gavin is entitled to LTD benefits under the terms of the Policy. *Accord McKeehan*, 344 F.3d at 793 (declining to apply discretionary review where "LINA failed to present evidence that its contractual agreement with the current Plan sponsor included the grant of such discretion"); *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 597 (6th Cir. 2001) (*de novo* review applies "[w]hen an unauthorized body that does not have fiduciary discretion to determine benefits eligibility renders such a decision"); *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 229 (2d Cir. 1995) ("Where an unauthorized party makes the determination, a denial of plan benefits is reviewed under the de novo standard."); *Nelson v. EG & G Energy Measurements Group, Inc.*, 37 F.3d 1384, 1389 (9th Cir. 1994) ("[B]ecause we do not have an interpretation of the Plan by the Administrative Committee, to whom such authority was granted by the Plan, there is no appropriate exercise of discretion to which to defer."); *Rodriguez-Abreu*, 986 F.2d at 584 ("Because the relevant plan documents did not grant discretionary authority to the Plan Administrator and the Named Fiduciaries did not expressly delegate authority to the Plan Administrator, we find that the district court correctly employed the *de novo* standard of review."); *Belheimer v. Fed. Ex. Corp. Long Term Disability Plan*, No. 6:12-00383-CRA, 2012 WL 5945042, at *7 (D.S.C. Nov. 28, 2012) (Anderson, J.) ("[A]s Federal Express delegated its

final decision making authority to Aetna, and the LTD Plan did not contemplate or authorize such a delegation, this Court will review the decision to deny Plaintiff's long-term disability benefits claim *de novo*."); *Durham v. IDA Group Ben. Trust*, 276 F.R.D. 259, 263-64 (N.D. Ind. Aug. 1, 2011) (Cherry, J.) (applying *de novo* review absent "[c]lear and unequivocal language" delegating plan administrator's discretionary authority to claims administrator); *Turner v. Retirement & Ben. Plans Committee Robert Bosch*, 585 F. Supp. 2d 692, 700 (D.S.C. Oct. 31, 2007) (Duffy, J.) (applying *de novo* review where claims administrator "overstepped a partial delegation of discretionary authority"); *Skibbe v. Metro. Life Ins. Co.*, No. 05 C 3658, 2007 WL 2874035, at *10 (N.D. Ill. Sept. 24, 2007) (Kendall, J.) ("Because ADP's discretionary authority was not expressly delegated to MetLife, MetLife's decision to terminate Skibbe's benefits will be subject to a de novo standard of review."); *Samaritan Health Cntr. v. Simplicity Health Care Plan*, 516 F. Supp. 2d 939, 950 (E.D. Wis. Sept. 17, 2007) (Clevert, J.) (relying on *Sanford*, *Sharkey*, *Nelson*, and *Rodriguez-Abreu* for the proposition that *de novo* review is appropriate "when the decision under review was not an exercise of discretion by the entity on whom discretion was conferred by plan documents or the proper delegate").

This court recognizes that a reasonable employee in Gavin's situation would have understood from the terms of the Plan and the SPD that Defendants probably *intended* LINA to have unfettered discretion in determining Gavin's eligibility for benefits. *See Ruttenberg*, 413 F.3d 652, 668 n.19 (7th Cir. 2005) ("[C]ourts in ERISA claims interpret policies based on normal contract principles; this includes considering the reasonable expectations of the insured."). Moreover, as Chief Circuit Judge Frank H. Easterbrook has noted, an employee in Gavin's position "has no interest in who, precisely, makes the decision." *Aschermann*, 689 F.3d at 729. Nevertheless, this court cannot turn a blind eye to the explicit language of the Plan.

"Simply put, the court cannot apply an abuse of discretion standard of review to a decision made by a decisionmaker who never had the discretion to make that decision." *Turner*, 585 F. Supp. 2d at 700.

2. Scope of Discovery

The court agrees with Gavin that he is entitled to "the same discovery as any party would be allowed in a breach of contract suit." (Pl.'s Br. at 10.); *see Krolnik v. Prudential Ins. Co. of Am.*, 570 F.3d 841, 843 (7th Cir. 2009) ("litigation under ERISA by plan participants seeking benefits should be conducted just like contract litigation"). The court trusts that the Federal Rules of Civil Procedure will establish an appropriate scope for any additional discovery desired by either party. *See Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 492 (7th Cir. 2007) ("The record calls for additional evidence only where the benefits of increased accuracy exceed the costs, a balance familiar to the district court.").

The court declines to rule at this time on any specific discovery issues identified in the briefing before the court, in part due to the court's lack of familiarity with the underlying record. If the parties find that they are unable to resolve any specific discovery dispute without the court's assistance, *see* N.D. Ill. Local Rule 37.2, the parties are free to file a proper motion under the Federal Rules of Civil Procedure and notice it before the court for adjudication.

## CONCLUSION

For the reasons set forth below, the court holds that the *de novo* standard of review applies, such that this court will independently determine based on the evidence presented in this case whether Gavin is entitled to LTD benefits under the terms of the Policy. All discovery relevant to this independent determination will be permitted, subject to the Federal Rules of Civil Procedure and any applicable discovery rulings made by this court or by the assigned magistrate

11

judge. Counsel are requested to meet pursuant to Rule 26(f) and jointly file a Form 52 on or before 3/7/13. This case is set for a report on status and entry of a scheduling order on 3/12/13, at 9:00 a.m. The parties are encouraged to discuss settlement.

ENTER:

/s/ James F. Holderman
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: February 25, 2013